Opinion filed June 18, 2009











 
 
  
 
 







 
 
  
 
 




Opinion
filed June 18, 2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00226-CV

                                                    __________

 

                              IN THE INTEREST OF A.L.K., A
CHILD

 



 

                                         On
Appeal from the 118th District Court

 

                                                        Howard
County, Texas

 

                                                   Trial
Court Cause No. 45,457

 



 

                                             M
E M O R A N D U M   O P I N I O N

This
is an accelerated appeal from the trial court=s
termination of parental rights.  We affirm. 

                                                               Background
Facts








Appellant,
Melanie Margaret DeLoach, is A.L.K.=s
mother.  Lee Roy Clay Kitchell is A.L.K.=s
father.  A.L.K. was born on August 31, 2002.  A.L.K. lived with appellant for
about the first eighteen months of his life.  On March 25, 2004, the Texas
Department of Family and Protective Services removed A.L.K., his half sister
M.A.C., and his half brother J.A.K. from appellant=s care. On the next day, the Department filed
an AOriginal Petition
for Protection of a Child, for Conservatorship, and for Termination in Suit
Affecting the Parent-Child Relationship@
in San Saba County, Texas.  In the final order in that cause, the trial court
appointed Kitchell as A.L.K.=s
permanent managing conservator and appointed appellant as A.L.K.=s possessory conservator. 
The order provided that appellant=s
possession of and access to A.L.K. were to occur at times mutually agreed to by
the parties and, in the absence of such an agreement, at the sole discretion of
Kitchell. 

After
the Department received allegations that Kitchell had sexually abused A.L.K.,
it removed A.L.K. from Kitchell=s
care.  On June 26, 2007, the Department filed its AOriginal Petition for Protection of a Child,
for Conservatorship, and for Termination in Suit Affecting the Parent-Child
Relationship@ in this
cause.  At that time, appellant was in the Travis County Jail.  In its
petition, the Department alleged that, if reunification of A.L.K. with
appellant could not be achieved, the trial court should terminate the
parent-child relationship between appellant and A.L.K.  The Department
requested the trial court to terminate the parent-child relationship between
Kitchell and A.L.K.  Kitchell signed an affidavit in which he voluntarily
relinquished his parental rights to A.L.K. Later, the Department filed a notice
of its intent to pursue termination of appellant=s
parental rights. 

Following
the filing of this cause, the trial court appointed the Department as A.L.K.=s temporary managing
conservator and approved placement of A.L.K. with Charlotte Spence.  M.A.C. and
J.A.K. also lived with Charlotte Spence and her husband, Aubrey Spence.  The
Spences are J.A.K.=s
biological grandparents.

After
a bench trial, the trial court entered an order terminating appellant=s parental rights to
A.L.K.  Under Tex. Fam. Code Ann.
' 161.001(Vernon
2008), the trial court found by clear and convincing evidence that appellant:

[1]
engaged in conduct or knowingly placed the child with persons who engaged in
conduct which endangers the physical or emotional well-being of the child [as
stated in Section 161.001(1)(E)];

 

[2]
had her parent-child relationship terminated with respect to another child
based on a finding that [her] conduct was in violation of ' 161.001(1)(D) or (E),
Texas Family Code, or substantially equivalent provisions of the law of another
state [as stated in Section 161.001(1)(M)];

 

[3]
failed to comply with the provisions of a court order that specifically
established the actions necessary for [her] to obtain the return of the child
who has been in the permanent or temporary managing conservatorship of the
[Department] for not less than nine months as a result of the child=s removal from the parent
under Chapter 262 for the abuse or neglect of the child [as stated in Section
161.001(1)(O)].                                                            








 The trial court
also found by clear and convincing evidence that termination of appellant=s parental rights was in
A.L.K.=s best
interest.  See Section 161.001(2).  

The
trial court=s order
also terminated Kitchell=s
parental rights to A.L.K.  Kitchell has not appealed the termination of his
parental rights and is, therefore, not a party to this appeal.  In its order,
the trial court appointed the Department as A.L.K.=s permanent managing conservator.

                                                                 Issues
on Appeal

Appellant
presents nine issues for review.  In her first issue, she contends that the
trial court abused its discretion in denying her request for a 180-day
extension of the dismissal date of this cause under Section 263.401 of the
Family Code.  See Tex. Fam. Code
Ann. ' 263.401
(Vernon 2008).  In her second through ninth issues, she challenges the legal
and factual sufficiency of the evidence to support the trial court=s Section 161.001(1)(E),
(M), and (O) and best-interest findings.

                                       Sufficiency
of the Evidence Standards of Review

Texas
courts have long recognized that the natural right existing between a parent
and a child is of  Aconstitutional
dimensions.@  Wiley
v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976).  There is a strong
presumption that the best interest of a child is served by keeping the child
with the natural parent.  In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). 
Thus, involuntary termination statutes are strictly scrutinized in favor of the
parent.  Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex. 1985).  

Due
process requires that the grounds for termination be established by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002)
(citing Santosky v. Kramer, 455 U.S.745, 769 (1982)); In re J.P.H.,
196 S.W.3d 289, 292 (Tex. App.CEastland
2006, no pet.).  This requires a measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. 
Tex. Fam. Code Ann. ' 101.007
(Vernon 2008); In re J.P.H., 196 S.W.3d at 292.  Even though it is a
fine one, there is a distinction between legal and factual sufficiency when the
burden is by clear and convincing evidence.  In re J.F.C., 96 S.W.3d at
266.    








When
the burden of proof is by clear and convincing evidence and a reviewing court
examines the evidence for legal sufficiency, we look at all the evidence in the
light most favorable to the finding to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that the finding was true.  Id. 
We must assume that the factfinder resolved disputed facts in favor of its
finding, if a reasonable factfinder could do so.  Further, we should disregard
all evidence that a reasonable factfinder could have disbelieved or found to
have been incredible.  Id.  But, we are not to disregard all evidence
that does not support the finding.  For instance, to disregard undisputed facts
that do not support the finding could lead to a flawed analysis of the
existence, or not, of clear and convincing evidence.  Id.  Further, when
we view evidence in the light most favorable to the verdict, it cannot be
viewed in Aisolated
bits and pieces divorced from its surroundings; it must be viewed in its proper
context with other evidence.@ 
AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex. 2008) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).  After a review
under these standards, if we determine that no reasonable factfinder could form
a firm belief or conviction in the truth of the matter to be proven, then we
must hold that the evidence is legally insufficient.  In re J.F.C., 96
S.W.3d at 266.

When
a court of appeals undertakes a factual sufficiency review, it must give due
consideration to evidence that the factfinder could reasonably have found to be
clear and convincing.  Id. at 263.  We must also determine if the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the allegations about which proof is sought.  Id.
at 266.  We must also ask:  Is the disputed evidence such that a reasonable
factfinder could not have resolved that disputed evidence in favor of its
ruling?  Id.  The evidence is factually insufficient if, on the record
as a whole, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction in the thing sought to be
proved.  Id.

To
terminate parental rights, the proponent must prove by clear and convincing
evidence that a parent committed one or more of the acts or omissions set forth
in Section 161.001(1) and that termination of parental rights is in the child=s best interest.  In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re B.L.D., 113 S.W.3d 340,
353-54 (Tex. 2003); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984).  On appeal, appellant asserts that the evidence was legally and
factually insufficient to support each of the three grounds B Section 161.001(1)(E),
(M), and (O) B that
the trial court found to support the termination.








                                                             The
Evidence at Trial

The
Department presented four witnesses at trial:  (1) appellant; (2) Amy
Hernandez, a caseworker for the Department; (3) Charlotte Spence; and (4) Isaac
Miramontes, the court-appointed special advocate and guardian ad litem assigned
to A.L.K.  After the Department rested, appellant=s
counsel recalled appellant to the stand.  We have reviewed all the evidence in
the record, and we will summarize the evidence below.     

A.L.K.
was five years old at the time of trial.  Appellant testified that A.L.K. lived
with her until he was about eighteen months old.  She said that the Department
removed him from her care as part of a neglectful supervision case.  The
Department placed A.L.K. in Kitchell=s
care in Big Spring.  Appellant testified that, while A.L.K. was in
Kitchell=s care, she
talked with A.L.K. on the phone Aquite
regularly@ and visited
him twice in Big Spring.  The Department removed A.L.K. from Kitchell=s care on June 25, 2007,
and filed this cause in Big Spring the next day.  At that time, appellant was
in the Travis County Jail.  After the Department removed A.L.K. from Kitchell=s care, A.L.K. spent some
time in foster care and then was placed in the care of Charlotte and Aubrey
Spence.  Two of appellant=s
other children, M.A.C. and J.A.K., also lived with the Spences.

Appellant
was released from the Travis County Jail on July 8, 2007.  Upon her release,
appellant lived in Llano.  She also said that she maintained employment after
her release from jail. On August 15, 2007, appellant signed a family service
plan.  The plan required appellant to perform a number of tasks and services,
including completing a psychological evaluation, completing a drug and alcohol
assessment, attending and successfully completing individual counseling,
attending and successfully completing parenting classes, submitting to random
drug screenings, maintaining stable housing and employment, providing the
Department with current locating information about herself, and demonstrating
her willingness to protect A.L.K. from future abuse or neglect.  The family
service plan indicated that a courtesy worker would be assigned to appellant,
and the family service plan required appellant to contact her courtesy worker
to set up some of the services.








Erica
Partlow-Melton was the initial caseworker for the Department in this case.  The
evidence showed that Melton did not assign a courtesy worker to appellant. 
Appellant testified that she could not complete the family service plan because
the Department did not assign her a courtesy worker in the Llano area. 
Hernandez testified that this case had been assigned to her on
November 1,  2007.  Hernandez said that Melton had not set up a
courtesy worker for appellant and that the failure to provide a courtesy worker
to appellant was her Amistake
as well.@  However,
Hernandez testified that she attempted to locate appellant in November 2007 for
the purpose of providing her with a courtesy worker.  Hernandez said that she
attempted to contact appellant by calling the phone numbers and by sending
letters to the addresses that the Department had listed for appellant in its
computers.  Hernandez also testified that she received no response from
appellant.  Hernandez acknowledged that appellant could not complete some of
the services in the plan without having a courtesy worker.

Appellant
testified that she attended AA/NA sessions in Llano.  She said that she
attended church and that she obtained counseling from a priest.  However,
appellant was arrested in San Saba County in December 2007 for possession of a
dangerous drug.  Appellant signed a statement in connection with the arrest. 
In the statement, appellant said that she had traveled to Waco with a man named
AMike@; that Mike had purchased
700 pills from another man in Waco; that, after the purchase, she and Mike had
driven to San Saba; that a police officer had stopped them; and that the
officer had found the pills in the car.  Appellant also testified that she was
placed on misdemeanor probation in Gillespie County for burglary of a
coin-operated machine.  At the time, appellant was already on probation for a state
jail felony offense of possession of a controlled substance.  Appellant said
that the misdemeanor burglary offense caused her felony probation to be revoked
and that, therefore, she went back to jail.  She said that she was in the
Travis County Jail from December 21, 2007, until January 22, 2008, when she was
sent to the Plane State Jail.  On February 15, 2007, Hernandez learned from
Charlotte Spence that appellant was in the Plane State Jail.  Hernandez said
that she sent a letter to appellant at the jail asking appellant to contact
her.    

Appellant
testified that she enrolled in the Changes class, a women=s health class, and a
parenting class at the Plane State Jail.  She said that she completed the women=s health class but was
unable to complete the Changes class and the parenting class because she was
transferred to the Woodman State Jail. 








Appellant
remained incarcerated at the time of trial.  She said that she had not seen
A.L.K. since he was removed from Kitchell=s
care.  Appellant thought that she would be released from prison on July 1,
2008.  However, she acknowledged that her misdemeanor probation in Gillespie
County might serve as a Ahold@ on her release and that
she faced a possible felony charge in San Saba County in connection with
her December 2007 arrest for possession of a dangerous drug.  When asked
further about her criminal history, appellant said that she had Asome theft by checks and
the criminal trespassing and a DWI.@

Appellant
testified that she was married to Darrell Hatfield.  Appellant said that
Hatfield had a significant criminal history.  Hatfield was in jail at the time
of trial.  Appellant said that Hatfield would be released from jail on June 12,
2008, and that she planned to reunite with him upon her release from prison. 
She said that A.L.K. did not know Hatfield.

Appellant
and Hatfield had a child, J.R.H., together.  J.R.H. was born on January 1,
2007. Appellant=s and
Hatfield=s parental
rights to J.R.H. had been terminated.  During her testimony, appellant admitted
that she used cocaine and smoked marihuana the night before J.R.H. was born.
Appellant said that J.R.H. was removed from her care because A[t]here was cocaine and
marihuana found in my system and her system.@ 
Appellant acknowledged that her parental rights to J.R.H. had been terminated,
and the trial court admitted into evidence a copy of the April 19, 2007 order
terminating the parent-child relationship between appellant and J.R.H.  In that
order, the trial court found by clear and convincing evidence that appellant
had violated Section 161.001(1)(D) and (E) of the Family Code.

Appellant
testified that, upon her release from prison, she wanted to have supervised
visits or weekend visits with A.L.K.  Ultimately, she desired for A.L.K.,
M.A.C., and J.A.K. to live with her full time.  She said that she wanted the
children to remain together.  Appellant testified that the Spences did an Aexcellent job@ taking care of the
children.

Hernandez
testified that the Department=s
original goal in this case was for Charlotte Spence to be appointed as A.L.K.=s permanent managing
conservator.  She said that the goal changed to termination of appellant=s parental rights and
adoption of A.L.K. after the Department learned of appellant=s December 2007 arrest.








Hernandez
testified that A.L.K. was placed with Charlotte Spence on August 1, 2007. 
Hernandez said that A.L.K. was current on his medical examinations, that he
participated in weekly play therapy, that his placement with the Spences was
sufficient to provide for his needs at the present time, and that the
Department=s goal for
A.L.K. was adoption by the Spences.  Hernandez believed that it was in A.L.K.=s best interest to
terminate appellant=s
parental rights.  Hernandez testified that adoption by the Spences would allow
A.L.K. to maintain contact with his siblings.  She said that A.L.K. had Agrown up with@ the Spences and his
siblings and that he had Abonded
well@ with them. 
Hernandez testified that appellant=s
continuing criminal activity concerned the Department.  Hernandez said that she
had no reason to believe that appellant could provide counseling or medical
care for A.L.K.

Charlotte
Spence testified that she was married to Aubrey Spence.  She said that A.L.K.
had lived with them since July 31, 2007.  She said that A.L.K. also lived with
them from March 2004 until late October 2004.  M.A.C. and J.A.K. also lived
with the Spences.  Charlotte Spence testified that she and her husband provided
for all of A.L.K.=s
needs, that they intended to provide a permanent placement for him, that they
wanted to adopt him, and that they could provide long-term care for him.  She
said that A.L.K. was doing very well and that, on a regular basis, he said, AI like it here.@  Charlotte Spence
testified that she and her husband did not want A.L.K., M.A.C., and J.A.K. to
be separated from each other.

Miramontes
testified that it would be in A.L.K.=s
best interest for the trial court to terminate appellant=s and Kitchell=s
parental rights.  Miramontes said that the first factor he took into
consideration was A.L.K.=s
age and his need for a safe and stable environment.  He said that the Spences
had provided A.L.K. with such an environment.  He also said that the Spences
appeared to be meeting all of A.L.K.=s
needs.  Miramontes also testified that A.L.K. was thriving in his placement
with the Spences.  He said that it was in A.L.K.=s
best interest to reach some form of permanency, which could be received through
termination of appellant=s
and Kitchell=s
parental rights followed by adoption.  Miramontes said that it did not appear
that appellant could provide permanency for A.L.K. and that he was very
concerned about her incarceration and additional outstanding charges. 
Miramontes also said that appellant did not have the ability to provide a safe
home environment for A.L.K. or to provide for his needs.  Miramontes did not know
whether appellant would be capable of taking care of A.L.K. in six months.  He
testified that A.L.K. deserved to have permanency as quickly as possible.

Trial
Court=s Finding
Under Section 161.001(1)(M)








In
her fourth and fifth issues, appellant challenges the legal and factual
sufficiency of the evidence to support the trial court=s Section 161.001(1)(M) finding.  Section
161.001(1)(M) provides that a court may order termination of the parent-child
relationship if the parent has Ahad
his or her parent-child relationship terminated with respect to another child
based on a finding that the parent=s
conduct was in violation of Paragraph (D) or (E).@ 
Section 161.001(1)(D) provides a ground for termination when the parent has Aknowingly placed or
knowingly allowed the child to remain in conditions or surroundings which
endanger the physical or emotional well-being of the child.@  Section 161.001(1)(E)
provides a ground for termination when the parent has Aengaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child.@       


Section
263.405 of the Family Code governs appeals of final orders involving children
under the Department=s
care.  Tex. Fam. Code Ann. ' 263.405 (Vernon 2008). 
The statute requires that a statement of points on which a party intends to
appeal be filed with the trial court not later than the fifteenth day after the
trial court signs the final order.  Section 263.405(b).  The statement of
points may be combined with a motion for new trial.  Section 263.405(b-1).  The
statute provides that A[t]he
appellate court may not consider any issue that was not specifically presented
to the trial court in a timely filed statement of the points on which the party
intends to appeal or in a statement combined with a motion for new trial.@  Section 263.405(i).

Appellant
timely filed a motion for new trial and a statement of points on which she
intended to appeal.  She challenged the legal and factual sufficiency of the
evidence to support the trial court=s
findings under Section 161.001(1)(E) and (O) in the motion for new trial and in
the statement of points.  However, she did not challenge the trial court=s finding under Section
161.001(1)(M) in either document.  The statute is clear that a party who does
not raise an issue in a statement of points does not preserve that issue for
appeal.  Therefore, we cannot consider appellant=s
fourth and fifth issues. 

We
note that the evidence set forth above showed that appellant had her
parent-child relationship terminated with respect to J.R.H. based on a finding
that she had engaged in conduct that violated Section 161.001(D) and (E). 
Therefore, assuming that appellant preserved the issue for review, the evidence
is legally and factually sufficient to support the trial court=s finding under Section
161.001(1)(M).








The
trial court=s finding
under Section 161.001(1)(M) is sufficient to support a termination order.  See
In re A.V., 113 S.W.3d 355, 362 (Tex. 2003) (AOnly
one predicate finding under section 161.001(1) is necessary to support a
judgment of termination.@). 
As such, we need not address appellant=s
second, third, sixth, and seventh issues challenging the trial court=s findings under Section
161.001(1)(E) and (O).

                                                   Trial
Court=s Best
Interest Finding

Appellant
argues in her eighth and ninth issues that the evidence was legally and
factually insufficient to support the trial court=s
finding that termination of her parental rights was in A.L.K.=s best interest.  In
deciding whether the evidence is sufficient to support a trial court=s finding that termination
is in the child=s best
interest, we are guided by the nonexclusive list of factors set forth in Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  Those factors include (1)
the desires of the child, (2) the emotional and physical needs of the child now
and in the future, (3) the emotional and physical danger to the child now and
in the future, (4) the parental abilities of the individuals seeking custody,
(5) the programs available to assist these individuals, (6) the plans for the
child by these individuals, (7) the stability of the home, (8) the acts or
omissions of the parent that may indicate the existing parent-child
relationship is not a proper one, and (9) any excuse for the acts or omissions
of the parent.  544 S.W.2d at 371-72.  The list is not an exhaustive one.  Id. 
The focus is on the child=s
best interest, not that of the parent.  Dupree v. Tex. Dep=t of Protective &
Regulatory Servs., 907 S.W.2d 81, 86 (Tex. App.CDallas 1995, no writ).

The
evidence demonstrated that A.L.K. had been in the Spences= home since July 31, 2007. 
The Spences had provided a safe and stable environment to A.L.K., and A.L.K.
was thriving in that environment.  The Spences had met A.L.K.=s needs.  Appellant
testified that the Spences did an excellent job taking care of the children. 
Miramontes testified that it was in A.L.K.=s
best interest to reach some form of permanency and that he deserved to have
permanency as quickly as possible.  The Spences wanted to adopt A.L.K. and,
therefore, to provide him with that permanency.








Appellant
had not exhibited adequate parenting abilities in the past.  A.L.K. was removed
from her care when he was eighteen months old.  Appellant has a lengthy
criminal history and a history of drug use.  She smoked marihuana and used
cocaine the night before J.R.H. was born, and her parental rights to J.R.H.
were terminated.  Appellant was in jail when the Department filed this cause. 
She was released from jail about two weeks later.  Appellant agreed in the
family service plan that she would maintain stable housing and employment. 
However, she failed to do so.  Instead, she continued to engage in criminal
activities, and her felony probation was revoked.  Appellant went to jail on
December 21, 2007, and she remained incarcerated at the time of trial.  The
evidence demonstrated that appellant could not provide A.L.K. a safe and stable
home environment or meet his physical and emotional needs.  Further, there was
no evidence that appellant would be able to sustain a safe and stable
environment or to meet A.L.K.=s
needs in the future.  Based on appellant=s
past conduct, the trial court could have reasonably concluded that appellant
would not be able to provide A.L.K. a safe and stable environment or to meet
his needs in the future.

The
evidence is both legally and factually sufficient to support the trial court=s finding that termination
of the parent-child relationship between appellant and A.L.K. was in A.L.K.=s best interest.  We
overrule appellant=s
eighth and ninth issues.

                                                 Appellant=s Request for an Extension

On
June 26, 2007, the trial court entered a temporary order naming the Department
as the temporary sole managing conservator of A.L.K.  Section 263.401(a) and
(b) of the Family Code provides as follows:

(a)
Unless the court has commenced the trial on the merits or granted an extension
under Subsection (b), on the first Monday after the first anniversary of the
date the court rendered a temporary order appointing the department as
temporary managing conservator, the court shall dismiss the suit affecting the
parent-child relationship filed by the department that requests termination of
the parent-child relationship or requests that the department be named
conservator of the child.

 

(b)
Unless the court has commenced the trial on the merits, the court may not
retain the suit on the court=s
docket after the time described by Subsection (a) unless the court finds that
extraordinary circumstances necessitate the child remaining in the temporary
managing conservatorship of the department and that continuing the appointment
of the department as temporary managing conservator is in the best interest of
the child.  If the court makes those findings, the court may retain the suit on
the court=s docket for
a period not to exceed 180 days after the time described by Subsection (a).      

 

The trial court
determined that the dismissal date for this cause was June 30, 2008.

In
her brief, appellant states that her counsel orally requested an extension
under Section 263.401(b) about two weeks before the final trial.  However,
appellant also states that A[t]he
hearing during which this initial motion was made was not included in the
Reporter=s Record.@  A docket entry made by
the trial court on May 21, 2008, indicates that appellant=s counsel made a motion to
extend the dismissal date and that the trial court denied the motion.








The
trial court held the bench trial in this cause on June 4, 2008.  After the
trial court requested announcements for the record, the following exchange took
place between appellant=s
counsel and the trial court:

[APPELLANT=S COUNSEL]:  [B]efore I
announce ready I would like to renew my motion that I made two weeks ago and my
request for an extension.  I don=t
know if your Honor would like for me to restate my reasons from before.  I am
sure the Court remembers, but basically requesting [appellant] be given a
chance to complete services, get an extension.  She is set to be released from
her current incarceration on July 1st, and therefore I would like to renew my objection
B not my objection B my motion for an extension
which I made two weeks ago.  

 

THE
COURT: The motion is in all respects denied.

 

[APPELLANT=S COUNSEL]: In with that
point then, I announce ready.                   

After the
evidence was concluded, appellant=s
counsel again renewed his request for an extension: 

[APPELLANT=S COUNSEL]: Your Honor,
prior to, I guess, resting and closing, I would like to renew my original
motion and request an extension once again.  I believe that there=s been significant evidence
to show that [appellant] has put forth the effort, that she made the attempt,
and I would renew my motion to request that there be an extension and that she
be given every opportunity in order to finish and show that she can complete
all services and that she basically should not have her rights terminated.

 

THE
COURT: The motion is in all respects denied.

 








We
review a trial court=s
ruling on a motion for extension under an abuse of discretion standard.  See
In re D.W., 249 S.W.3d 625, 647 (Tex. App.CFort
Worth 2008, pet. denied).  To obtain an extension under Section 263.401(b),
appellant had the burden of demonstrating that Aextraordinary
circumstances necessitate[d] the child remaining in the temporary managing
conservatorship of the department and that continuing the appointment of the
department as temporary managing conservator [was] in the best interest of the
child.@   The trial
court=s docket sheet
shows that, on May 21, 2008, appellant=s
counsel made a motion to extend the dismissal date. However, as acknowledged by
appellant in her brief, the record does not contain a reporter=s record of the hearing on
the motion.  Therefore, the record does not show that appellant tendered any
evidence in support of her request for an extension.  In the absence of a
reporter=s record of
the hearing, we are unable to determine whether appellant met her burden for
obtaining an extension.  Under this circumstance, we cannot conclude that the
trial court abused its discretion in denying appellant=s motion for extension.

On
the trial date, appellant=s
counsel renewed the motion for extension when the trial court requested
announcements for the record.  At that time, appellant offered no evidence in
support of the motion.  Instead, her counsel stated the grounds that he
believed justified an extension.  Because appellant tendered no evidence in
support of her motion for an extension, she cannot demonstrate that the trial
court abused its discretion in denying it.  In re D.W., 249 S.W.3d at
648.  Appellant=s
counsel again renewed the motion for extension at the conclusion of the
evidence.  Viewing all the evidence presented at trial, we cannot say that the
trial court abused its discretion in denying appellant=s motion.  The evidence, which is summarized
above, did not demonstrate that Aextraordinary
circumstances@
justified an extension or that continuing the Department=s appointment as A.L.K.=s temporary managing conservator was in his
best interest.  We overrule appellant=s
first issue.

                                                               This
Court=s Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

June 18, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.