**Opinion issued July 12, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-09-00502-CV

————————————

**PHYLLIS RENEE SHANKLIN, Appellant**

**V.**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE--INSTITUTIONAL DIVISION, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 29884**

---

**MEMORANDUM OPINION**

Phyllis Shanklin sued the Texas Department of Criminal Justice (TDCJ) under the Texas Commission on Human Rights Act (TCHRA) for terminating her employment, bringing claims of discrimination based on race and sex, as well as

on retaliation for raising the discrimination claims. *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055, 21.254 (West 2006). The trial court granted the TDCJ's motion for summary judgment on the discrimination claims and held a jury trial on the retaliation claim. The jury returned a defense verdict, and the trial court entered a take-nothing judgment.

Shanklin appeals, contending that the trial court erred in granting summary judgment on her discrimination claims because the summary judgment evidence raised a fact issue on whether the TDCJ's proffered reason for its decision to terminate her employment was pretextual. Shanklin also claims that the trial court erred in failing to provide the jury with the legal definition for retaliation. Finding no error, we affirm.

**Background**

Shanklin's employment as a correctional officer with the TDCJ began in the summer of 2001. The TDCJ publishes general rules of conduct and disciplinary action guidelines for its employees. As an employee of the TDCJ, Shanklin was expected to comply with those rules of conduct and was subject to a range of disciplinary action if she did not. The guidelines group violations of the rules of conduct into four categories of violation levels and set out a recommended punishment range for each level. The TDCJ also provides a grievance procedure

2

that employees may invoke with respect to any disciplinary action they feel is unfair or unfounded.

The following incidents preceded the termination of Shanklin's employment:

- *January 2003*: The TDCJ notified Shanklin that it suspected abuse of sick time. As a result, for the next six months, Shanklin was required to provide a doctor's note to be able to return to work after each time she called in sick or used sick time for the next six months.

- *Early June 2003*: Shanklin's supervisor, Sergeant Charles Massie, told Shanklin that he planned to write her up for sleeping on duty. Shanklin wrote an entry in the comments section of the employee performance log that referred to Massie in a derogatory way. Massie cited Shanklin for insubordination, a Level 3 violation. Warden Richard Trinci found Shanklin guilty of insubordination and assessed four months' disciplinary probation. She was found not guilty of sleeping on the job.

- *Mid-June 2003*: Shanklin called in sick on June 18. She was still within the six-month period imposed in January, but failed to turn in the required doctor's note. The TDCJ cited Shanklin for failure to obey orders. Warden Diana Oliphant assessed twelve months' disciplinary

3

probation to be served after Shanklin completed the four months' disciplinary probation in the insubordination case.

- *October 2003*: Shanklin injured her back while on vacation and took sick time for the last two weeks of the month. Under TDCJ policy, she was placed on Family Medical Leave Status and was required to present a health care provider's statement containing "medical facts" within a specified number of days of her return to duty. TDCJ policy explains that medical facts "identify the cause or nature of the illness or injury (i.e., viral illness, internal bleeding, back pain, upper respiratory infection)." Shanklin returned to work on November 2 but failed to provide the requisite statement within the prescribed period. Shanklin submitted a note after the period lapsed, but an individual within the personnel office informed Shanklin that the late note was unacceptable because it did not contain medical facts. Shanklin had a family friend fax another doctor's note to the TDCJ personnel office, but she later was told that the office never received the fax. On November 21, she received a notice from the TDCJ charging her with failure to follow agency rules, policy, and regulations and informing her that it had set a disciplinary hearing on the charge.

Under the Guidelines, "an employee who has three sustained violations other than tardiness within a 12-month period may be recommended for dismissal." Warden Oliphant found Shanklin guilty of failing to obey agency policy based on her failure to timely provide a doctor's certification containing adequate medical facts. Oliphant recommended Shanklin's dismissal, and Institutional Division Director Doug Dretke approved that recommendation. Shanklin filed a grievance to seek review of the termination decision and went through the TDCJ's mediation procedure. Ultimately, the TDCJ sustained the decision to terminate Shanklin's employment. Shanklin filed a charge with the Equal Employment Opportunity Commission and then brought suit against the TDCJ.

After discovery was substantially complete, the TDCJ moved for a no-evidence and a traditional summary judgment on Shanklin's claims. Shanklin responded to the motion, but addressed only the issues pertaining to her retaliation claim. The trial court granted summary judgment in favor of the TDCJ on Shanklin's discrimination claims and proceeded to trial on her retaliation claim.

## Discussion

### I.    *Summary Judgment on Discrimination Claims*

#### A.    *Standard of Review*

The TDCJ moved for summary judgment on both traditional and no-evidence grounds, and the trial court's order grants summary judgment without

5

specifying any grounds.  We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

A summary motion must state the specific grounds relied upon for summary judgment.  TEX. R. CIV. P. 166a(c).  A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense.  *Sci. Spectrum, Inc.*, 941 S.W.2d at 911.

After adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim or defense on which the opposing party has the burden of proof.  TEX. R. CIV. P. 166a(i).  The trial court must grant the motion

6

unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

Here, Shanklin opposed the TDCJ's motion for summary judgment on her retaliation claim, but did not respond to the TDCJ's grounds for dismissal of her discrimination claims. When, as here, the movant has filed a motion that identifies the elements as to which there is no evidence, and the form of the motion satisfies Rule 166a(i)—in that it is neither conclusory nor a general no-evidence challenge—summary judgment must be rendered absent a timely and legally adequate response by the nonmovant. *See Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

### B. *Employment Discrimination*

Chapter 21 of the TCHRA provides that an employer commits an unlawful employment practice if it discharges an employee on the basis of "race, color, disability, religion, sex, national origin, or age. . . ." TEX. LAB. CODE ANN. § 21.051(1). In reviewing discrimination cases under TCHRA, we apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–25 (1973); *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also*

7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2105–06 (2000) (discussing development of burden-shifting scheme). Pursuant to this scheme, the plaintiff is first required to present a prima facie case of discrimination. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106. To establish a violation of TCHRA, a plaintiff must show she was (1) a member of the statutorily protected class, (2) qualified for her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the unprotected class. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *see Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106.

### C.    *Analysis*

As the basis for summary judgment, the TDCJ contended that Shanklin could not establish a prima facie case of discrimination based on sex or race because she had no evidence of any similarly situated TDCJ employee who was not disciplined or terminated. To prove discrimination based on disparate treatment, "the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *see AutoZone*, 272 S.W.3d at 595. Further, the situations and conduct of the employees in question must be "nearly identical." *Monarrez*, 177 S.W.3d at 917–18; *see also Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004). "Employees with different responsibilities, supervisors,

8

capabilities, work rule violations, or disciplinary are not considered to be 'nearly identical.'" *AutoZone*, 272 S.W.3d at 594 (citing *Monarrez*, 177 S.W.3d at 917).

With its motion for summary judgment, the TDCJ presented evidence that Oliphant recommended Shanklin's dismissal based on her failure to timely provide a satisfactory doctor's note. Oliphant's superior accepted that recommendation, and the decision was affirmed following Shanklin's exhaustion of the internal grievance procedures. Shanklin disputes whether she timely provided a doctor's note, alleging that a third party faxed a second note to the TDCJ personnel office within the required time frame. She learned nearly two weeks later that the TDCJ claimed that the personnel office never received the fax.

This dispute does not raise a fact issue in light of the relevant summary judgment evidence the TDCJ proffered. The TDCJ proffered Shanklin's deposition testimony in which Shanklin conceded that she had no evidence that Director Dretke, Warden Trinci, or Warden Oliphant—herself an African-American female—based the disciplinary decisions on any discriminatory animus. Shanklin also conceded in her deposition that she knew of no other TDCJ employee who did not receive the same disciplinary result for failure to timely provide an adequate doctor's note following an absence for medical reasons. Shanklin did not identify any employee with a comparable disciplinary record who was not recommended for dismissal. *See Flores v. City of Liberty*, 318 S.W.3d

9

551, 557 (Tex. App.—Beaumont 2010, no pet.) (noting that employee with single act of misconduct was not similarly situated to employee with multiple infractions). Further, Shanklin did not offer other evidence that any agent of the TDCJ harbored discriminatory animus toward her; she relied solely on her own subjective opinion and speculation that the TDCJ made the decision to terminate her because of her race and sex. To establish a genuine issue of material fact, evidence must be more than merely subjective and speculative. *See Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 522 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (explaining that appellant's subjective belief regarding reason for discharge is insufficient to raise fact issue); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (stating that subjective beliefs of discrimination, without more, are insufficient to establish prima facie case). We hold that Shanklin failed to present any evidence that would raise a genuine issue of material fact on the challenged disparate treatment element, and thus could not support a prima facie case of discrimination. For this reason, we do not reach her arguments concerning pretext and causation.

## II.    *Charge Error Claim*

Shanklin also complains that the trial court erred in failing to provide the jury with the legal definition of retaliation in response to a jury request for that definition. The clerk's record indicates that the jury's note could not be included

and the reporter's record does not contain any discussion or objection from Shanklin concerning the jury's question and trial court's response that might preserve this issue for appellate review. *See* TEX. R. APP. P. 33.1.

Even if this complaint were not waived, Shanklin's complaint is unavailing. "The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002) (citing TEX. R. CIV. P. 278). Rule 277 gives the trial court broad discretion in deciding which jury instructions are necessary and proper. *See Williams*, 85 S.W.3d at 166. We review a trial court's decision to submit or refuse a particular instruction under an abuse-of-discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).

Before asking whether the TDCJ was liable for retaliation, the charge instructed the jury:

> To prevail in her retaliation case, Ms. Shanklin must prove by a preponderance of the evidence that (1) she engaged in a protected activity; (2) TDCJ took an adverse employment action against her due to or because of her participation in the protected activity; and (3) TDCJ took the adverse action due to or because of her participation in the protected activity.

This instruction satisfied any need for a legal definition of retaliation. For purposes of Shanklin's TCHRA claim, "retaliation" is correctly defined as an

11

adverse employment action taken against an employee "due to or because of" her participation in a protected activity. *See City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008) ("The reasonable reading of the CHRA's 'under this chapter' language is that actionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the CHRA . . . .").

## Conclusion

We hold that the trial court correctly granted summary judgment on Shanklin's discrimination claims. We further hold that the trial court did not err in its jury instruction on retaliation. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.